## FORD v. STURGIS et. al.

(Court of Appeals of District of Columbia.
Submitted January 7, 1924. Reargued April
5, 1926. Decided June 10, 1926.)

No. 4026.

**1. Negligence ⬳⟶55.**

Person designing and furnishing structural iron and steel for building, after its completion and acceptance by owner, is not liable to third person injured by its collapse.

**2. Negligence ⬳⟶55.**

Generally negligence of contractor in constructing building will not render him liable to third person in consequence thereof, after work has been completed and accepted.

Appeal from Supreme Court of District of Columbia.

Action by Guy Sturgis, administrator of the estate of Victor M. Sturgis, deceased, and others, against John H. Ford and others. From an order overruling the named defendant's demurrer to declaration, he appeals. Order reversed, and cause remanded.

J. C. Gibson and J. W. Hazell, both of Washington, D. C., for appellant.

C. A. Douglas, J. W. Cox, C. H. Syme, and J. L. Fort, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. [1] The decedent, Victor M. Sturgis, while attending a moving picture exhibition in the Knickerbocker Theater in the city of Washington, on January 28, 1922, was instantly killed by the collapse of the theater building. His administrator brought suit for damages in the lower court, naming as joint defendants the Knickerbocker Theater Company, a corporation, which built the theater and owned and operated it at the time of the accident, Harry M. Crandall, its president and general manager, Reginald W. Geare, the architect of the building, John H. Ford, and the Union Iron Works Company, who furnished the iron and steel work for the building, and the District of Columbia.

The defendant Ford filed a motion to strike out the declaration for alleged misjoinder of parties defendant and causes of action. This was overruled. He next filed a general demurrer to the declaration, which also was overruled. He then took this special appeal.

The declaration sets out that the building in question was erected and designed, as all of the defendants well knew, to be used for profit as a moving picture theater; that it was constructed and caused to be constructed by the defendants the theater company and Crandall, the latter having active control and direction of the construction; that the defendant Geare was employed to design and draw the plans and specifications, and to exercise general direction and supervision of the construction; that the defendants Ford and the Union Iron Works Company were the contractors for the structural steel and iron to be used for supporting the roof, ceiling, and balcony; that the District of Columbia undertook to supervise and inspect the plans and specifications, as well as the construction of the building; that it was the duty of each of the defendants to use reasonable care and diligence in the performance of said duties, in order that the building should be safe and secure for its intended use; and that it was the duty of the theater company and Crandall to cause the theater to be so constructed that it would be safe and secure, and to maintain it in a safe condition. Yet the defendants and each of them negligently and carelessly failed to perform their duties in the premises, so that, while the decedent was occupying one of the seats in the theater as a patron and spectator, the roof, ceiling, and balcony collapsed and fell, and "through the negligence and carelessness of the defendants, and each of them, and as a result thereof, the decedent, without any negligence on his part, was then and there killed."

The complaint against the appellant Ford, accordingly, is that he contracted with the theater company and Crandall to design, fabricate, furnish, and install, under their direction, the structural steel and iron to be used in the building for supporting its roof, ceiling, and balcony; that it was his duty to use reasonable care and diligence in performing the contract, but that he "negligently and carelessly" designed, fabricated, furnished, and installed the structural steel and iron aforesaid; and that the roof, ceiling, and balcony of the theater collapsed and fell, because of his negligence and that of the other defendants as aforesaid. The complaint does not specify or describe any particular defect in Ford's work or materials, nor is it claimed that he had actual knowledge of any such defect, or of any defect in any other part of the building, or that he was guilty of fraud or concealment. It is fairly implied that he was not a part owner of the building, nor an officer of the theater company, and that he had no part in the construction of the building, except for his

aforesaid contract; that his work was inspected and accepted by the employing company at a time prior to the accident; that he had no part in the subsequent maintenance of the structure; and that the building was in the possession and control of the theater company and Crandall at the time of the accident.

We think it unnecessary to discuss the motions relating to the alleged misjoinder of parties and causes, for in our opinion the allegations of the declaration are not sufficient to warrant a recovery against Ford by the plaintiff.

[2] There was, of course, no privity of contract existing between Ford and the decedent, and the general rule is well established, that the negligence of a contractor in constructing a building will not render him liable to a third person, who is injured in consequence thereof after the work has been completed and accepted by the owner of the building. 20 R. C. L. 49. "After completion and acceptance of a building, the liability of the builder for accidents caused by defective construction ceases, and the liability attaches to the owner, whether the damage is attributable to his own negligence or to that of the builder." 9 C. J. 751; 6 Thompson on Negligence, p. 465. The reason sometimes stated for this conclusion is that otherwise there would be no end to suits. It is elsewhere given as a better ground that the negligence of the owner in maintaining the defective building, and not that of the builder in constructing it, is the true proximate cause of the third person's injury. Wharton on Negligence, § 439.

In Mayor of Albany v. Cunliff, 2 N. Y. 165, it was held that builders of a public work are answerable only to their employers for any want of reasonable care and skill in executing their contract, and they are not liable to third persons for accidents or injuries which may happen to them from imperfections of the structure, after the same is completed and has been accepted by the employers. This ruling is cited with approval by Mr. Justice Clifford in Savings Bank v. Ward, 100 U. S. 195, 204, 25 L. Ed. 621.

In Daugherty v. Herzog, 145 Ind. 255, 44 N. E. 457, 32 L. R. A. 837, 57 Am. St. Rep. 204, the defendant contracted with the owner to remodel and in part reconstruct a building. He completed the work and turned the building over to the owner. Afterwards the building collapsed, because, as was alleged, of defendant's negligence, causing the death of a third person. It was held upon demurrer that the contractor was not liable in damages to the third party.

In Curtin v. Somerset, 140 Pa. 70, 21 A. 244, 12 L. R. A. 322, 23 Am. St. Rep. 220, the defendant contracted with a company to erect a hotel. After the work was completed and accepted, the plaintiff, a guest in the hotel, was injured by the fall of a porch, due to inferior construction and a failure of the defendant to comply with the plans and specifications. A recovery was denied, and the general rule above stated was applied. "The consequence of holding the opposite doctrine," says the court, "would be far-reaching. If a contractor, who erects a house, who builds a bridge, or performs any other work, the manufacturer, who constructs a boiler, piece of machinery, or a steamship, owes a duty to the whole world, that his work or his machine or his steamship shall contain no hidden defect, it is difficult to measure the extent of his responsibility, and no prudent man would engage in such occupations upon such conditions. It is safer and wiser to confine such liabilities to the parties immediately concerned."

"There is no rule under which a third person may recover damages against a builder or contractor for an injury sustained by reason of defective construction, if the thing constructed is not inherently and necessarily dangerous, when the injury did not occur until after the builder or contractor had parted with the possession and title. The liability of the builder or contractor for defective construction is to the person with whom he was under contractual relations, and a stranger can hold him liable after he has parted with possession only under exceptional circumstances." Lurton, Circuit Judge, in Salliotte v. King Bridge Co., 122 F. 378, 381, 58 C. C. A. 466, 469, 65 L. R. A. 620.

This doctrine is supported by many authorities, among which are the following cases brought by third parties against contractors for injuries occurring after acceptance of the construction by the employer: First Presbyterian Congregation v. Smith, 163 Pa. 561, 30 A. 279, 26 L. R. A. 504, 43 Am. St. Rep. 808 (defective sewer); Cunningham v. T. A. Gillespie Co., 241 Mass. 280, 135 N. E. 105 (defective sidewalk); Galbraith v. Illinois Steel Co., 133 F. 485, 66 C. C. A. 359, 2 L. R. A. (N. S.) 799 (defective steel support for storage tank); Williams v. Edward Gillen Dock, D. & C. Co., 258 F. 591, 169 C. C. A. 531 (unguarded breakwater in lake); Thomas v. Lane, 221 Mass. 447, 109 N. E. 363, L. R. A. 1916F, 1077 (defective hand

rail upon steps); Thornton v. Dow, 60 Wash. 622[1] (defective balcony railing); Burdick v. Cheadle, 26 Ohio St. 393, 20 Am. Rep. 767 (defective shelving in storeroom); Collie v. Selden, L. R. 3 C. P. 495 (negligent hanging of chandelier); Field v. French, 80 Ill. App. 78 (defective elevator).

The foregoing doctrine is not limited to cases relating to building operations, for it is a general rule that a contractor, manufacturer, vendor, or furnisher of an article is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of the article. 2 Cooley on Torts, 1486.

In the leading English case of Winterbottom v. Wright, 10 Mees. & W. 109, 115, injury was received by the driver of a mail coach which broke down from defects in its construction. He brought suit against the constructor of the coach, who sold the same to the owner of the line in whose employment the driver was engaged when the accident happened. It was held that the action would not lie, as there was no privity of contract between the parties. Unless we confine the operation of such contracts as this to the parties who entered into them, said Lord Abinger, the most absurd consequences, to which no limit can be seen, will ensue; and Baron Alderson remarked, if we hold that the plaintiff can sue in such case, there is no point at which such actions will stop. The only safe rule is to confine the right to recover to those who enter into the contract; for if we go one step beyond that, there is no reason why we should not go fifty.

In National Savings Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621, an attorney gave to a client a certificate of title setting forth a good title in the latter to a certain tract of land. The client obtained a loan from the bank on the strength of the certificate, giving a mortgage on the property as security. The loan was not paid, and when the bank attempted to enforce the mortgage it was discovered that prior to the date of the certificate the client had executed a conveyance in fee to a third party. The bank sued the attorney for negligence in giving the false certificate. It was held that the attorney owed no duty to the bank, because there was no privity of contract and recovery was denied. The court referred with approval to the views expressed in Winterbottom v. Wright, supra.

It is true that certain alleged exceptions to the general rule are recognized by the authorities. These may be classified as follows: (a) An act of negligence of a manufacturer or vendor, which is imminently dangerous to human life and health, and which is committed in the preparation or sale of articles, like foods and poisons, whose primary use is to serve, destroy, or affect life and health. Thomas v. Winchester, 6 N. Y. (2 Seld.) 397, 57 Am. Dec. 455; Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 S. Ct. 270, 53 L. Ed. 453. Compare Cadillac Motor Car Co. v. Johnson, 221 F. 801, 137 C. C. A. 279, L. R. A. 1915E, 287, Ann. Cas. 1917E, 581; Id., 261 F. 878, and MacPherson v. Buick Motor Co., 217 N. Y 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440. (b) The negligence of an owner who expressly or impliedly invites third parties to use defective machines or instruments manufactured or furnished by him. Coughtry v. Globe Woolen Co., 56 N. Y. 124, 15 Am. Rep. 387. (c) Where a manufacturer or vendor, without giving notice of its character and qualities, supplies or delivers to another a machine or article which at the time of delivery he knows to be imminently dangerous to the life and limbs of any one who may use it for the purpose for which it is intended. Huset v. J. I. Case Threshing Machine Co., 120 F. 865, 57 C. C. A. 237, 61 L. R. A. 303. Compare Marquardt v. Ball Engine Co., 122 F. 374, 58 C. C. A. 462, O'Brien v. American Bridge Co., 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. (N. S.) 980, 136 Am. St. Rep. 503, and Heizer v. Kingsland & Douglass Mfg. Co., 110 Mo. 605, 19 S. W. 630, 15 L. R. A. 821, 33 Am. St. Rep. 482. (d) Where the manufacturer or constructor has full knowledge of the defects rendering the article or structure dangerous, but willfully conceals the same. Kuelling v. Roderick Lean Mfg. Co., 183 N. Y. 78, 75 N. E. 1098, 2 L. R. A. (N. S.) 303, 111 Am. St. Rep. 691, 5 Ann. Cas. 124; Penn. Steel Co. v. Elmore & Hamilton C. Co. (C. C.) 175 F. 176. Compare Lebourdais v. Vitrified Wheel Co., 194 Mass. 341, 80 N. E. 482. (e) Where the article or structure is a nuisance per se, in which case negligence is immaterial. Washington Ry. & Elec. Co. v. Washington Terminal Co., 44 App. D. C. 470.

We think it clear that the declaration does not bring this case within any of these exceptions, nor does the rule of res ipsa loquitur serve such a purpose against appellant Ford; the case is left, therefore, to be governed by the general rule aforesaid.

Many of the almost innumerable decisions upon this subject have been collected and classified by Sanborn, Circuit Judge, in Huset v. J. I. Case Threshing Machine Co., supra.

In our opinion, the lower court erred in

---

[1] 111 P. 899, 32 L. R. A. (N. S.) 968.

overruling appellant's demurrer. Its order is therefore reversed, with costs, and the cause is remanded for further proceedings not inconsistent herewith.