## FISHER v. WASHINGTON COCA-COLA BOTTLING WORKS, Inc.

### No. 6598.

United States Court of Appeals for the District of Columbia.

Decided May 11, 1936.

Mark P. Friedlander and Robert I. Silverman, both of Washington, D. C., for plaintiff in error.

Cornelius H. Doherty, of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This case arises upon a writ of error to the Municipal Court of the District of Columbia. The action was in tort for negligent injury caused, as alleged, by noxious material in a Coca-Cola bottle. There was a jury, and at the close of the case for the plaintiff (plaintiff in error here), there was a directed verdict for the defendant (defendant in error here). The only error assigned is the action of the trial judge in granting the motion of the defendant for a directed verdict, the plaintiff asserting that there was sufficient evidence to go to the jury, the defendant claiming the contrary.

The case made for the plaintiff was, in substance and effect, as follows: On May 22, 1935, at about noon, the plaintiff went into a delicatessen store in the District of Columbia and there purchased a bottle of Coca-Cola. This was opened for him by the proprietor who handed it to the plaintiff. The plaintiff commenced drinking, and after taking the first drink, discovered that the liquid had a peculiar taste. He became nauseated, weak and commenced to sweat. He had had something to eat about 7 a. m., and between then and the time he drank the Coca-Cola had "nothing to drink except perhaps Coca-Cola." He consulted a doctor at once and was at home sick and away from work for four days. The bottle contained "something round like that thumb (indicating) * * * it had a real bad taste and a kind of mouldy-looking something in it * * * the substance was hanging in the bottle and did not become loosened when the bottle was shaken * * * it was white and brown, looked like a flame, was sticky, spongy and soft, but did not give way from the bottle * * * it looked like it was corroded and a little white, and was hanging on the side of the bottle * * *." The proprietor of the delicatessen store purchased his Coca-Cola from the defendant Washington Coca-Cola Bottling Works, a box or so daily. There were probably a few bottles left over from one case when the Coca-Cola representative came around with another one; "it is not probable but possible that those bottles get mixed up and one may be there for some time, but most generally he [the proprietor] sells out his supply." The particular bottle served the plaintiff was kept in the icebox in a sanitary place with other soft drinks. When the proprietor opened the bottle and handed it to the plaintiff, nothing was put in it. The defendant at the time in question was engaged in the business of bottling, manufacturing and selling a beverage known as Coca-Cola.

The plaintiff's (amended) bill of particulars charged no specific act of negligence, alleging merely, after stating facts

similar to those proved in the plaintiff's case, "that due to the negligence of the defendant the aforesaid substance was present in the bottle of Coca-Cola as aforesaid; and that the facts and circumstances concerning the manufacture*d*, bottling and distribution of the said bottle of Coca Cola are exclusively within the knowledge and control of the defendant * * *."

We think it clear that this case should have been submitted to the jury. In Chevy Chase Dairy v. Mullineaux, 63 App.D.C. 259, 71 F.(2d) 982, 984, we held that evidence to the effect that milk purchased from a dairy in an original bottle was found to contain particles of broken glass with resultant injury to the plaintiff's children when they drank the milk, was properly submitted to the consideration of the jury for the determination of the asserted negligence of the defendant. That case is controlling unless, as asserted by the defendant, it is distinguishable from the instant case, first, because the Chevy Chase Dairy Case involved a substance (broken glass) "harmful * * * to the human body" whereas the instant case does not; second, because in the Chevy Chase Dairy Case the milk was received directly from the dairy whereas in the instant case the Coca-Cola was not received directly from the defendant manufacturing company but indirectly, that is, through the proprietor of the delicatessen store. We think the case is not distinguishable in either of such respects. As to the first, the jury might properly have found in the instant case that the substance in the bottle was what made the plaintiff ill and therefore that it was harmful to the human body. As to the second, the jury might properly have concluded from the plaintiff's case that the contents of the bottle were undisturbed until it reached the plaintiff's hands. Under the testimony, the defendant, for all practical purposes, was in exclusive control of the bottle and its contents until it was opened. A similar distinction was attempted to be taken in Goldman & Freiman Bottling Co. v. Sindell, 140 Md. 488, 117 A. 866 (which we cited in Chevy Chase Dairy v. Mullineaux, supra). There the plaintiff bought from a confectioner a bottle of "Whistle" which had been put up by the defendant. The confectioner, as in the instant case, opened it in the plaintiff's presence. As in the Chevy Chase Dairy Case, it contained glass which injured the plaintiff. The court held that the presence of broken glass in the bottle at the time it was sold by the Bottling Company was evidence of negligence. In terms, the court said:

"The presence of a noxious substance in the article sold is in itself evidence of negligence on the part of the manufacturer when it is shown that the article contained such substance when it was sold by him." 140 Md. 488, at page 498, 117 A. 866, 870.

It was urged by the Bottling Company that as the "Whistle" was not in its control at the time the injury was sustained, an inference of negligence was not warranted. Speaking in terms of the doctrine *res ipsa loquitur,* the court said:

"There is nothing, however, in the reason for the rule or in the principles upon which it is founded to support the contention that its application is limited to cases where the injurious agency is in the control of the defendant at the time of the injury, but it is sufficient if it appears that such agency was in his control at the time of the negligent act which caused the injury." 140 Md. 488, at page 502, 117 A. 866, 871.

In respect of similar facts, the same point of view was taken in Rozumailski v. Philadelphia Coca-Cola B. Co., 296 Pa. 114, 118, 145 A. 700, 701, where the court said, speaking again apparently in the light of the doctrine *res ipsa loquitur*:

"The manufacturer was for all purposes in exclusive control of the bottle and its contents, as its contents were undisturbed until it reached the consumer's hands."

Other cases of interest, involving similar facts, are: Norfolk Coca-Cola Bottling Works v. Krausse, 162 Va. 107, 173 S.E. 497, which reviews many of the authorities, and Campbell Soup Co. v. Davis, 163 Va. 89, 175 S.E. 743. It is pointed out by the Virginia court in the Norfolk Coca-Cola Case that there is a division of view upon the question whether the doctrine *res ipsa loquitur* should be applied. The Virginia court does not apply it, but nevertheless holds that such facts as are here under discussion constitute a prima facie case of negligence. The Maryland court, as above pointed out, spoke in terms of *res ipsa loquitur* in respect of the matter of control of the injurious agency. On the whole of the case it said that the doctrine was not necessarily involved, but indicated that there was nothing to prevent its application. While in Chevy Chase Dairy v. Mullineaux, supra, we did not rest our decision in express terms upon the doctrine

*res ipsa loquitur,* we did cite Goldman & Freiman Bottling Co. v. Sindell, stating that it is not inapplicable.

It seems to us that the doctrine *res ipsa loquitur* is applicable to such a situation as is involved in the instant case, and rightly requires the submission of such a case to the jury. That rule, hardly to be better stated than in the literality of its own words, has been explained by this court in Moore v. Clagett, 48 App.D.C. 410, 415, as one which:

"arises in a case where the accident is such that, in the ordinary course of events, it would not have happened except through the negligence of the defendant, and where the facts relating to the accident are peculiarly within his knowledge. In such a case, from the mere happening of the accident, a presumption of negligence arises, which, if not satisfactorily explained by the defendant, authorizes a recovery."

This case is based on Sweeney v. Erving, 228 U.S. 233, at pages 238, 239, 33 S.Ct. 416, 417, 57 L.Ed. 815, Ann.Cas.1914D, 905, where the Supreme Court, speaking through Mr. Justice Pitney, said:

"The general rule in actions of negligence is that the mere proof of an 'accident' (using the word in the loose and popular sense) does not raise any presumption of negligence; but in the application of this rule, it is recognized that there is a class of cases where the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed by the party charged with care in the premises, the thing that happened amiss would not have happened. In such cases it is said, *res ipsa loquitur,*— the thing speaks for itself; that is to say, if there is nothing to explain or rebut the inference that arises from the way in which the thing happened, it may fairly be found to have been occasioned by negligence."

Again, in San Juan Light Co. v. Requena, 224 U.S. 89, 98, 99, 32 S.Ct. 399, 401, 56 L.Ed. 680, the same Court, speaking through Mr. Justice Van Devanter, put it thus:

"when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care."

We think it may properly be said, putting the instant case in terms of the quotation from Moore v. Clagett, that: the "accident" here, that is, the drinking of a noxious liquid with consequent illness, was such that in the ordinary course of events it would not have happened except through the negligence of the defendant; the facts relating to the "accident," that is, the facts which might account for the presence of the noxious substance in the bottle, were peculiarly within the knowledge of the defendant manufacturing company. Or, putting the case in terms of the quotation from San Juan Light Co. v. Requena, we think it may properly be said that: the thing which caused injury here, without fault of the injured person, to wit, the noxious liquid, is shown to have been under the exclusive control of the defendant (that is, it is properly inferable from the plaintiff's testimony that he had no control over the manufacturing, bottling and distributing process and that the defendant had sole control); the injury was such as in the ordinary course of things would not occur if the defendant manufacturing company, having such exclusive control, had used proper care (Coca-Cola ordinarily does not contain a noxious substance); thus the case made out by the plaintiff afforded reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care.

We have examined with care all of the authorities cited by the defendant. We think none of them requires the conclusion that this case ought not be submitted to a jury. The cases cited from this jurisdiction are King v. Davis, 54 App.D.C. 239, 296 F. 986, Ford v. Sturgis, 56 App.D.C. 361, 14 F.(2d) 253, 52 A.L.R. 619, and F. W. Woolworth Co. v. Williams, 59 App.D. C. 347, 41 F.(2d) 970. The last case is distinguishable. The plaintiff there slipped in the defendant's store, but testified to nothing except a slightly raised oval spot on the floor. The plaintiff's case was speculative as to the cause of the injury. In Ford v. Sturgis, a suit against the furnishers of structural steel for a theatre building which collapsed, it was stated that:

"it is a general rule that a contractor, manufacturer, vendor, or furnisher of an article is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or

264

sale of the article. 2 Cooley on Torts, 1486." 56 App.D.C. 361, at page 363, 14 F.(2d) 253, 255, 52 A.L.R. 619.

But in the opinion it was also recognized that the rule is not applicable to:

"An act of negligence of a manufacturer or vendor, which is imminently dangerous to human life and health, and which is committed in the preparation or sale of articles, like foods and poisons, whose primary use is to serve, destroy, or affect life and health. [Authorities cited.]" 56 App. D.C. 361, at page 363, 14 F.(2d) 253, 255. In King v. Davis, 54 App.D.C. 239, at page 241, 296 F. 986, 988, where the plaintiff charged injury through ptomaine poisoning by "corrupt and unfit" veal served in a dining car by the defendant who:

"knew, or should have known by the exercise of reasonable care, that the veal at the time it was served was unfit for human consumption, but * * * notwithstanding this * * * intentionally and unlawfully served it, to the injury of the plaintiff * * *."

this court held that a peremptory instruction for the defendant was erroneous. There had been failure of proof of actual knowledge that the veal was unfit, and the trial judge thought that to hold the defendant liable on the theory that it could by due care have discovered the unfitness before serving the veal, would be equivalent to holding the defendant as an insurer. This view this court rejected. It is true that in King v. Davis, we said that the doctrine res ipsa loquitur was not applicable. We had earlier ruled in Moore v. Clagett, supra, that the rule res ipsa loquitur is not applicable when there is an allegation of a specific act of negligence as distinguished from a general charge of negligence. We said in that case:

"It is within the election of the plaintiff to avail himself of the rule by merely alleging and proving the circumstances of his presence, the accident, and the injuries sustained. He may elect, however, to specifically allege in detail the circumstances which led to the accident and upon which the charge of negligence is based. But, by electing to take this course, he assumes the burden of establishing the negligence in the manner charged, and the rule of res ipsa loquitur is thereby banished from the case." 48 App.D.C. 410, at page 415.

We said also there, quoting from Roscoe v. Met. Street Ry. Co., 202 Mo. 576, 101 S. W. 32, that:

"General allegations of negligence are permitted because plaintiff, not being familiar with the instrumentalities used, has no knowledge of the specific negligent act or acts occasioning the injury, and for a like reason the rule of presumptive negligence is indulged. But, if plaintiff by his petition is shown to be sufficiently advised of the exact negligent acts causing, or contributing to, his injury, as to plead them specifically, as in this case, then the reason or the doctrine of presumptive negligence has vanished. If he knows the negligent act, and he admits that he does so know it by his petition, then he must prove it, and, if he recovers, it must be upon the negligent acts pleaded and not otherwise." 48 App.D.C. 410, at page 415.

In Moore v. Clagett, where the plaintiff asserted injury through the breaking of a seat in the defendant's moving picture theatre, the charge of negligence was specific, to wit, that the defendant:

"used and put into the construction of said seats, unsound and weak lumber * * * not sufficiently strong to bear the weight of persons who might be seated thereon." 48 App.D.C. 410, 411.

In King v. Davis, we carried into effect Moore v. Clagett. We said that the doctrine res ipsa loquitur:

"may be invoked only where the facts of the occurrence warrant the inference of negligence, and the pleader, because of the nature of the case, is not able to point out the specific act which caused the injury complained of. Moore v. Clagett, 48 App. D.C. 410, 415. But where, as here, the declaration alleges the precise acts upon which the case is predicated, namely, the service of the veal with knowledge, actual or constructive, that it was unfit for human consumption, the doctrine has no application. The pleader knew the acts of negligence on which she relied, and she was required to prove them, or some of them, without the aid of the presumption which flows from the application of the doctrine of res ipsa loquitur. Moore v. Clagett, supra." 54 App.D.C. 239, at pages 242, 243, 296 F. 986, 989, 990.

In short, in King v. Davis, the court's theory of the non-applicability of the doctrine res ipsa loquitur was that the plaintiff there had charged a specific negligent act, to wit, the service of the veal with knowledge that it was unfit, or under circumstances where the exercise of reasonable care would have disclosed its unfitness and that the plaintiff

having thus charged, was obliged to prove the charge. In the case at bar, as pointed out above, the plaintiff charged no specific act of negligence. He did not assert, in parallel with King v. Davis, that the Coca-Cola was put in the hands of the delicatessen store by the defendant manufacturing company with knowledge that it was noxious or under circumstances where the exercise of reasonable care would have made known that it was unfit; nor did he charge, in parallel with Moore v. Clagett, that the defendant company in the course of the manufacturing or bottling process put into its bottle some unsound ingredient which produced the noxious substance ultimately causing the plaintiff's illness. The plaintiff charged merely, in effect, that the defendant made and (through the delicatessen store) furnished him Coca-Cola containing a noxious substance, with consequent injury to the plaintiff; or, in terms of the bill of particulars—after setting out the purchase, the drinking, the substance in the bottle and the illness—that:

"due to the negligence of the defendant the aforesaid substance was present in the bottle of Coca-Cola as aforesaid; and that the facts and circumstances concerning the manufactured, bottling and distribution of the said bottle of Coca Cola are exclusively within the knowledge and control of the defendant * * *."

Hence, we think King v. Davis does not stand in the way here.

Accordingly, the judgment of the Municipal Court is

Reversed and the case remanded for further proceedings in accordance with this opinion.