**Madeline GILPER, Appellant,**

v.

**KIAMESHA CONCORD, INC., a corp.,
Appellee.**

**No. 6256.**

District of Columbia Court of Appeals.

Argued March 20, 1972.

Decided March 29, 1973.

Samuel Intrater, Washington, D. C., with whom Albert Brick, Washington, D. C., was on the brief, for appellant.

John C. Williams, Washington, D. C., for appellee.

Before . KERN and YEAGLEY, Associate Judges, and HOOD, Chief Judge, Retired.

YEAGLEY, Associate Judge:

Appellee brought this action to recover upon a default judgment obtained in the Supreme Court of the State of New York in the sum of $263.17 representing an unpaid hotel bill plus costs. Appellant acknowledged that she had not paid the bill,

but attacked the validity of the judgment on the ground that the service of process in the District of Columbia, under the New York long arm statute, was not sufficient to bring her under the jurisdiction of the New York court. She also filed a counterclaim for damages alleging that she had become very ill as a result of appellee's negligence or breach of warranty in permitting a "salamander-like bug" or "roach" to get in the salad served her by appellee.

The trial court awarded appellee judgment on the pleadings on its New York judgment with interest and costs. However, the case went to trial before a jury on appellant's counterclaim. At the conclusion of appellant's case, the court granted appellee's motion for a directed verdict on the ground that the evidence was not sufficient to warrant the jury awarding a verdict to appellant in that there was no evidence that the roach itself or anything she consumed was the proximate cause of her illness.

Appellant alleges error in both rulings of the trial court. As to the validity of the New York judgment on the hotel bill, which depends on the service of process under the New York long arm statute, we affirm the ruling on appellee's motion for judgment on the pleadings. However, we reverse and remand for a new trial on appellant's counterclaim.

The evidence adduced at trial was that on July 27, 1969, appellant arrived at appellee's hotel in New York for a one week's vacation. On August 1, while eating a salad at lunch in the hotel dining room, appellant bit down on something "crunchy" which she expectorated. The crunchy object was apparently a roach [1] and although appellant did not swallow it, she testified that thereafter she became quite ill and

suffered from nausea, dizziness and a nervous stomach. However, she did not proffer any medical testimony at trial to support her case. Nor did she offer any other evidence to show that the salad was tainted.

■ We turn first to the issue raised by the pleadings as to whether the New York default judgment was invalid for lack of jurisdiction as a result of the alleged improper service of process. The duly attested record of the judgment of a state is entitled to such faith and credit in every court within the United States as it has by law or usage in the state from which it is taken.[2]

■ However, in a suit upon the judgment of another state, the jurisdiction of the court which rendered judgment is always open to judicial inquiry. Adam v. Saenger, 303 U.S. 59, 62, 58 S.Ct. 454, 82 L.Ed. 649 (1938). District of Columbia courts are equally bound. Loughran v. Loughran, 292 U.S. 216, 227–228, 54 S.Ct. 684, 78 L.Ed. 1219 (1934). If jurisdiction were lacking the judgment, of course, would not be entitled to full faith and credit. Van Wagenberg v. Van Wagenberg, 241 Md. 154, 215 A.2d 812, cert. denied, 385 U.S. 833, 87 S.Ct. 73, 17 L.Ed.2d 68 (1966). The power of the District of Columbia to examine into whether, under the New York law, the court of that state which rendered the judgment in question herein had the authority to do so is beyond question. Treinies v. Sunshine Mining Co., 308 U.S. 66, 78, 60 S.Ct. 44, 84 L.Ed. 85 (1939); Hull v. Gamblin, D.C.App., 241 A.2d 739 (1968).

The New York long arm statute is found in section 302 of the New York Civil Practice Law and Rules.[3] The question

---

1. Appellant testified that she first showed the bug to the waitress who agreed that it looked like a roach and then reported the incident to the manager.

2. U.S.Const. art. IV, § 1 and 28 U.S.C. § 1738 (1971).

3. "§ 302. Personal jurisdiction by acts of non-domiciliaries

"(a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the

raised by appellant is whether the language in that law, upon which jurisdiction depends, "transacts any business within the state", can be applied to a nonresident who enters New York State for the sole purpose of vacationing.

■■ The New York statute endeavors to give the courts of New York personal jurisdiction over any nondomiciliary who could be reached constitutionally as having had sufficient state contacts measured by the jurisdictional yardstick established by the Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In that case the Court said:

. . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." . . . [326 U.S. at 316, 66 S.Ct. at 158]

It is sufficient for the purposes of due process if the suit is based on a contract which has substantial connection with the state. McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

In International Shoe Co. v. Washington, *supra*, 326 U.S. at 316, 66 S.Ct. 154, the Supreme Court cited with approval Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940), wherein the Court had under consideration a decision of the Colorado Supreme Court rejecting a Wyoming judgment based on substituted service. The Supreme Court said of the substituted service there:

Its adequacy so far as due process is concerned is dependent on whether or not the form of substituted service provided for such cases and employed is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard. If it is, the traditional notions of fair play and substantial justice [citation omitted] implicit in due process are satisfied. . . .

The Court said that the defendant's domicile in Wyoming, although he was residing out of the state when served, was a sufficient basis for the extraterritorial service.

The basis for the extraterritorial service under the New York long arm statute is that the person "transacts any business within the state".

When the constitutionality of the New York statute was first raised, the New York Court of Appeals held that the principles laid down by the Supreme Court which required a nonresident defendant to have certain "minimum contacts" with the forum and to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)) were satisfied by the New York statute as applied. Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, cert. denied, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).[4] We have no problem with

acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:
"1. transacts any business within the state; or
"2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
"3. owns, uses or possesses any real property situated within the state.

"(b) Effect of appearance. Where personal jurisdiction is based solely upon this section, an appearance does not confer such jurisdiction with respect to causes of action not arising from an act enumerated in this section."

4. Although Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, cert. denied, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965), dealt with a corporate

that holding and have previously recognized the validity of the Texas long arm statute. Hull v. Gamblin, *supra.*

Even though the formal execution of the contract in *Longines-Wittnauer* had not occurred in New York, the Court of Appeals held that "the statutory test may be satisfied by a showing of other purposeful acts performed by the appellant in this State in relation to the contract, albeit preliminary or subsequent to its execution." [Footnote omitted.] *Longines-Wittnauer, supra,* 261 N.Y.S.2d at 18, 209 N.E.2d at 75.

Whether the transaction is for profit is not the test for "transacting business", rather it is whether significant "acts" are done within the state. Kochenthal v. Kochenthal, 28 A.D.2d 117, 282 N.Y.S.2d 36 (1967).

Speaking for the New York Court of Appeals again in the case of Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 339, 256 N.E.2d 506, 507 (1970), Judge Fuld stated that in the *Longines-Wittnauer case:*

> We concluded . . . it was the purpose of CPLR 302 to extend the jurisdiction of our State courts to nonresidents who have "engaged in some purposeful activity [here] * * * in connection with the matter in suit." [Citation omitted.] And, it is hardly necessary to add, proof of a "single transaction in New York" would satisfy this statutory requirement. . . .

In the *Gamblin* case, *supra,* this court upheld the constitutionality of the Texas long arm statute and the validity of a judgment against a District of Columbia resident who had been served outside of the State of Texas. We held in that case that the appellant had been "doing business" in Texas within the meaning of its statute by virtue of having placed a listing in the Amarillo, Texas classified telephone directory under the heading "Patent Searchers," advertising "Free Invention Protection Forms."

In the case at bar appellant contracted for board and lodging at appellee's resort hotel in New York State. Even though appellant was vacationing, she chose to deal with a business enterprise which in turn had to comply with various laws and regulations that provide benefits and protection to its guests such as those regarding health, safety and civil rights.

When appellant "purposefully" availed herself of the privilege of conducting activities in New York, she thereby "invok[ed] the benefits and protection of its laws" relating to the conduct of her activities. We find sufficient "contacts" and state interest on the facts here, so that service of process on appellant outside the territorial limits of New York was in accordance with its laws and did not constitute a denial of due process of law.

The second issue raised by this appeal is whether the trial court erred in directing a verdict against appellant on her counterclaim. Finding, as we do, that on the evidence the jury might have found that the biting into the roach and the consumption of the salad could have produced the injury claimed by appellant, we reverse the order of the trial court granting appellee's motion for a directed verdict and remand for a new trial on appellant's counterclaim.

The issue of the sufficiency of the evidence to establish negligence is procedural in the District of Columbia and accordingly is governed by the law of the forum. Machanic v. Storey, 115 U.S.App. D.C. 87, 317 F.2d 151 (1963). In Tobin v. Pennsylvania R. Co., 69 App.D.C. 262, 263,

defendant, the Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in establishing the criteria for "minimum contact" jurisdiction over a corporate defendant, did not exclude its

application to an individual. Calagaz v. Calhoon, 309 F.2d 248, 255 (5th Cir. 1962), held that the above rules applied to corporations are equally applicable to natural persons.

100 F.2d 435, 436 (1938), cert. denied, 306 U.S. 640, 59 S.Ct. 488, 83 L.Ed. 1040 (1939), the court said:

> The law applicable to the case, so far as it concerns the standard of conduct required of the parties, is the law of the place of injury[5] . . . but the application of the standard must be made according to the law of the forum for that is a procedural matter. . . .

■ The rule in the District of Columbia is that there can be no recovery for negligently caused mental disturbance or emotional distress, or any consequence thereof, which is not traceable to a substantial physical injury. Harrison v. Canada Dry Corp., D.C.App., 245 A.2d 642 (1968).

The trial court in granting appellee's motion for a directed verdict noted that there was no medical testimony to establish that appellant's illness was caused by anything which she ate. The court held that the mere fact that the appellant found a roach in her salad was not sufficient to warrant recovery where the nature of the injury was only psychological reaction from biting into the roach. However, in view of the evidence, we are not satisfied that it was for the court to decide whether appellant's illness stemmed only from a psychological reaction or whether it was caused physically by her eating the salad or biting into the roach.

■ It has long been the rule in the District of Columbia that on a motion for a directed verdict in a negligence action the evidence must be construed most favorably to the plaintiff and he is entitled to the full benefit of every legitimate inference therefrom. Tobin v. Pennsylvania R. Co., supra; Machanic v. Storey, supra.

■ The evidence was that appellant while eating a salad bit into a roach which she expectorated. The presence of the roach in the salad would be some evidence at least that the salad she ate may have been tainted. The fact that appellant promptly expelled the roach does not necessarily mean that her biting into it caused her no ill effects.

Since the illness followed shortly thereafter, the jury could properly have concluded that her illness resulted from physical rather than psychological causes. Campbell v. Safeway Stores, Inc., D.C.Mun. App., 149 A.2d 420 (1959), and cases cited therein. We agree that medical testimony would be highly desirable on such an issue, but on this record we believe there was sufficient evidence for the case to go to the jury.

■ In Campbell v. Safeway Stores, supra, the court said that medical testimony is not necessary to establish that a piece of cheese with a fly embedded in it is not wholesome food. We cannot say that a salad with a roach in it is less tainted than cheese with a dead fly embedded in it.

Appellee's brief is replete with cases denying recovery for psychological reactions to deleterious matter found in food or drink absent a causal connection between consumption of the food and the alleged injury. We, of course have no disagreement with those decisions. However, whether the injury here was occasioned directly by the consumption of the unwholesome food or was only the result of psychological reaction caused by her discovery of the roach was a question of fact for the jury. See Campbell v. Safeway Stores, supra.

Since the jury, in the instant case, under appropriate instructions[6] could have found

5. Both parties argued the merits of the counterclaim according to the law of the District of Columbia. In the absence of evidence the law of New York will be presumed to be the same as the law in the District of Columbia, it not having been briefed or argued. Boland v. Love, 95 U.S.App.D.C. 337, 222 F.2d 27 (1955).

6. Campbell v. Safeway Stores, Inc., D.C. Mun.App., 149 A.2d 420, 422 (1959).

that appellant's illness was caused by the consumption of the tainted salad, it was error for the trial court to order a directed verdict. Accordingly, the cause is remanded for a new trial on appellant's counterclaim.

Affirmed in part; reversed and remanded in part.